# Morris et al. *v.* Pittsburgh Railways Company, Appellant.

*Negligence—Street railways—Passenger boarding car—Sudden starting—Fall—Customary stopping place—Regular stopping place —Case for jury.*

1. Passengers may lawfully get on and off a trolley car when it is standing at a place where it is in the habit of stopping, apparently for that purpose, and under such circumstances it is the duty of the carrier to afford them a reasonable opportunity so to do. A customary stopping place becomes as to the public in effect a regular stopping place.

2. In an action against a street railway company to recover for personal injuries sustained by an intending passenger while attempting to board a car, the case is for the jury where the evidence was conflicting as to whether the accident was occasioned by the sudden starting of the car as plaintiff was about to board it at a customary though not a regular stopping place, or whether plaintiff fell and sustained the injuries complained of while attempting to board the car while in motion or by slipping off a stone or in the mud while making the attempt to board it.

3. Where in such case it appeared that plaintiff was seventeen years of age and earned $1.76 per day, that he intended to become a mechanic, that he had been disabled from working for some time, that he suffered great pain and had been compelled to undergo two operations resulting in the amputation of his leg, and that his

carning power was impaired because of his permanently crippled condition, a verdict of $10,000 was not so clearly excessive as to warrant the Supreme Court in granting a new trial.

Argued Oct. 17, 1916.  Appeal, No. 86, Oct. T., 1916, by defendant, from judgment of C. P. Allegheny Co., April T., 1914, No. 1071, on verdict for plaintiff, in case of Stephen Morris, a minor, by his father and next friend, John Morris, and John Morris in his own right, v. Pittsburgh Railways Company.  Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.  Affirmed.

Trespass to recover damages for personal injuries. Before DAVIS, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff, John Morris, for $2,000, and for plaintiff, Stephen Morris, for $10,000 and judgment thereon.  Defendant appealed from the judgment entered in favor of Stephen Morris.

*Errors assigned* were instructions to the jury.

*William A. Challener,* with him *Clarence Burleigh,* for appellant.

*Rody P. Marshall,* with him *Thomas M. Marshall,* for appellee.

OPINION BY MR. JUSTICE WALLING, February 5, 1917:

Defendant has a double track street railway between Homestead and Duquesne in Allegheny County, along the southern bank of the Monongahela river; and, connected therewith at Duquesne Junction, is another system of tracks which crosses the bridge at Rankin.  The junction is a transfer point; and there on the south side of the street defendant has certain small buildings including a waiting room, dispatcher's office and motorman's room; and a short distance further west is a lunch room

or restaurant. Between such buildings and the tracks is a large brick platform extending westerly a few feet beyond the west line of the lunch room; still further west there is an old wall extending apparently along the south street line; and between it and the south or east bound track is an open unpaved space. Nearly opposite the west line of the lunch room is a point where the tracks coming across the bridge and turning to the west connect with the main line, called the "switch point." The regular stopping place is some distance further east, in front of or near the waiting room; but the evidence tends to show that for some years east bound cars had been accustomed to stop to receive and discharge passengers at or near the switch point, and before arriving at the regular stop.

At about six o'clock on the evening of January 10, 1913, Stephen Morris, the plaintiff, then seventeen years of age, was returning from his work at the Westinghouse plant to his home in Duquesne, and alighted from a car at said junction intending to take an east bound car for home. He walked westerly to or perhaps beyond the west end of the brick platform. It was dark and a light rain was falling. Soon an east bound car approached, and, plaintiff and his witnesses testify, came to a stop near the switch point, and plaintiff took hold of the handrail at the rear end of the motor car with his right hand, having a dinner pail on his left arm, and placed his foot on the first step, when the car started forward with a sudden jerk, and he was thrown to the ground so that his left foot was crushed by the trailer attached to the motor car. Defendant's evidence is to the effect that the car did not stop at that point, and that plaintiff was injured in attempting to board a moving car, or by slipping off a stone, or in the mud, where he was standing a considerable distance west of the platform. The evidence as to the cause and manner of the accident was very conflicting and properly submitted to the jury.

After the accident plaintiff was assisted to the wall

where he remained a brief time and then was taken on one of defendant's cars across the river to the car barn where he received the first aid to the injured, and then was removed to the hospital, where he remained about five months; and where by reason of the injury his left leg was twice amputated, the last time about six inches below the knee. The wounds did not heal readily from the operation and he has had difficulty in wearing an artificial limb. Before the accident plaintiff was earning $1.76 per day and intended to become a mechanic. Between the accident and time of trial he was not able to work or earn wages. The foot was badly lacerated and gangrene set in and for some time plaintiff suffered great pain.

If, as the evidence for plaintiff tended to prove, this place near the switch point had for a long time been a usual and customary stopping place for receiving and discharging passengers, and the car stopped there on the occasion in question, plaintiff had a right to board it and if hurt by the sudden and premature starting of the car, without fault on his part, defendant would be liable. People may lawfully get on and off a passenger car when standing at the place where it is in the habit of stopping apparently for that purpose; and under such circumstances it is the duty of the carrier to afford them a reasonable opportunity so to do. In other words, a customary stopping place in time becomes as to the public in effect a regular stopping place. What the trial judge said as to defendant's duty under such circumstances was free from error. The case was stubbornly contested, but the jury accepted plaintiff's version of the facts and found a verdict of $10,000 in his behalf. The father's case is not before this court.

The charge fairly presents the question of the diminution of plaintiff's earning power; and when that element is taken in connection with that of pain, suffering and the inconvenience, resulting from plaintiff's permanently

crippled condition, the verdict is not so clearly excessive as to warrant the interference of this court.

The assignments of error are overruled and the judgment is affirmed.